UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| J.G., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br><br> Defendant. | Case No. 21-cv-03118-VKD <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 12, 18 |

Plaintiff J.G.[1] appeals a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381, *et seq*. J.G. contends the administrative law judge ("ALJ") erred in two respects. First, J.G. contends that the ALJ erred in improperly evaluating the medical opinions in the record. Second, J.G. contends that the ALJ failed to provide sufficient reasons for discounting his subjective testimony.

The parties have filed cross-motions for summary judgment. The matter was submitted without oral argument. Upon consideration of the moving and responding papers and the relevant evidence of record, for the reasons set forth below, the Court grants J.G.'s motion for summary judgment, denies the Commissioner's cross-motion for summary judgment, and remands this

---

[1] Because orders of the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by his initials. This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

matter for further administrative proceedings consistent with this order.[2]

## I.  BACKGROUND

J.G. filed applications for disability insurance benefits and supplemental security income on May 10, 2018, when he was 36 years old, alleging that he had been disabled since December 11, 2014 due to major depressive disorder, anxiety, post-traumatic stress disorder, and hyperventilation.  AR[3] 15-16, 376-77, 380-81.

J.G. has a limited education, and he does not have a high school diploma or G.E.D.  AR 29, 68.  He has prior work experience as a home attendant, bouncer and bartender-helper, and check cashier.  AR 29, 71.

J.G.'s applications were denied initially and on reconsideration.  AR 146-51, 156-62.  An ALJ held a hearing and subsequently issued an unfavorable decision on November 27, 2020.  AR 15-31.  The ALJ found that J.G. met the insured status requirements of the Act through December 31, 2018 and that he did not engage in substantial gainful activity since the alleged onset date of December 11, 2014.  AR 18.  She further found that J.G. has the following severe impairments: "major depressive disorder, generalized anxiety disorder, and a personality disorder."  AR 19.  However, the ALJ concluded that J.G. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's regulations.  AR 20.

The ALJ determined that J.G. has the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: "the claimant can perform work consisting of simple, repetitive tasks with no more than frequent interpersonal contact with coworkers, supervisors, or the public."  AR 22.  The ALJ found that J.G. is unable to perform past relevant work because the demands of his past relevant work exceed this RFC.  *Id.*  However, the ALJ found that J.G. is able to perform other jobs existing in significant numbers in the national economy, including hospital food service worker, hand packager, and retail marker.  AR 30.

---

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 7, 9.

[3] "AR" refers to the certified administrative record lodged with the Court. Dkt. No. 11.

Accordingly, the ALJ concluded that J.G. was not disabled, as defined by the Act, from the alleged onset date of December 11, 2014 through the date of the decision. *Id.*

The Appeals Council denied J.G.'s request for review of the ALJ's decision. AR 1-3. J.G. then filed the present action seeking judicial review of the decision denying his applications for benefits. Dkt. No. 1.

## II.  LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citation omitted); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted). In this context, the term "substantial evidence" means "more than a mere scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by regulation on other grounds*); *see also Morgan*, 169 F.3d at 599. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Ahearn*, 988 F.3d at 1115 (citation omitted); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Ahearn*, 988 F.3d at 1115-16 (citation omitted); *Morgan*, 169 F.3d at 599 (citation omitted).

## III.  DISCUSSION

J.G. contends that the ALJ erred by improperly evaluating the medical opinions in the record and by failing to provide sufficient reasons for discounting his subjective testimony. The Court addresses each of these contentions.

### A.  Medical Opinions

J.G. challenges three of the ALJ's determinations regarding medical opinions. First, he

argues that the ALJ erred in finding the medical opinions of two non-examining state psychological consultants, Drs. Morgan and Jacobs, persuasive. Second, he argues that the ALJ erred in finding the medical opinion of Dr. Greene, J.G.'s treating psychiatrist, unpersuasive. Third, he argues that the ALJ erred in finding the medical opinion of Dr. Estupinian, J.G.'s treating psychologist, unpersuasive.

Under the regulations that apply to J.G.'s applications,[4] the Commissioner no longer gives specific evidentiary weight to medical opinions, including the deference formerly given to the opinions of treating physicians. Instead, the Commissioner evaluates the "persuasiveness" of all medical opinions in the record based on: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c[5]; *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies."). As with all other determinations made by the ALJ, the ALJ's persuasiveness explanation must be supported by substantial evidence. *Woods*, 32 F.4th at 792 ("[U]nder the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

Supportability and consistency are considered the most important factors, and the ALJ is required to explicitly address them in his or her decision. 20 C.F.R. § 404.1520c(b)(2).

---

[4] On January 18, 2017, the Commissioner promulgated new regulations concerning the evaluation of medical opinions. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). These new regulations apply to all applications for benefits filed after March 27, 2017. *Id.*; 20 C.F.R. § 404.1520c. Since J.G.'s application was filed after March 27, 2017, these new regulations apply to his case. *See* AR 15-16, 376-77, 380-81. In light of these new regulations, the parties dispute the extent to which Ninth Circuit case law decided under the prior regulations retains force. The Court finds that a straightforward application of the new regulations is sufficient here to decide the case and so does not need to resolve this dispute.

[5] Because the regulations regarding disability insurance benefits applications and supplemental security income applications are nearly identical, for simplicity the remainder of this order cites only to the regulations pertaining to disability insurance benefits applications.

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). The ALJ "may, but [is] not required to," explain how he or she considered the remaining three factors listed in the regulations. 20 C.F.R. § 404.1520c(b)(2).

### 1. Drs. Morgan's and Jacobs's Medical Opinions

J.G. contends that the ALJ erred by finding the medical opinions of Drs. Morgan and Jacobs persuasive. The Court agrees.

Drs. Morgan and Jacobs are state agency psychological consultants. They reviewed the record available before the hearing[6] but did not examine or treat J.G. AR 26. The consultants concluded that J.G. suffers from depressive, bipolar and related disorder, anxiety and obsessive-compulsive disorder, and personality and impulse-control disorder. AR 91, 121-22. They found that J.G's depression, anxiety, and personality disorders cause moderate limitations in all four areas of mental functioning ("paragraph B criteria"). AR 92, 122. They concluded that these limitations in mental functioning restrict him to "simple, repetitive tasks in settings with reduced interpersonal contact," but do not render him disabled under the Act. AR 96, 127.

The ALJ found Drs. Morgan's and Jacobs's conclusions persuasive because their "findings are supported by [their] reviews of the record and are consistent with the longitudinal record." AR 26. In support of this assessment, the ALJ observed that the consultants noted that although J.G. showed "anxious or depressed mood at treatment sessions with feelings of being overwhelmed," he also had "generally intact cognitive function, judgment, and insight." *Id*  The ALJ found that these findings "remained consistent with the totality of the record, as [J.G.'s] mental status examinations were substantially similar through the date of the decision" and "continued to show some mood disturbance or occasional symptoms, such as perseverations or restlessness, but

---

[6] Following the hearing, Dr. Estupinian, *see* Ex. 30F, and Dr. Greene, *see* Ex. 31F, submitted additional reports. While the ALJ reviewed these reports, Drs. Morgan and Jacobs did not.

generally indicated normal thought process, thought content, behavior, and grooming with fair to good judgment and insight." *Id.* In addition, the ALJ noted that the consultants found J.G. had exerted "poor effort on a neuropsychological evaluation, with variable results on multiple trials and scores consistent with Alzheimer's patients." *Id.*

J.G. argues that the consultants' conclusions are inconsistent with the longitudinal record and that the ALJ failed to provide any specific detail regarding how she reconciled, or did not reconcile, the consultants' conclusions with the rest of the record. Dkt. No. 12 at 15; Dkt. No. 19 at 5. Specifically, J.G. says that the ALJ "failed to address how [the consultants'] opinions were consistent (or not) with Mr. Gusman's suicidal ideation and decompensation with stress, both of which she found to be present throughout the record." Dkt. No. 12 at 15.

While the record includes some observations from treating physicians indicating that J.G. occasionally demonstrated normal function, behavior, judgment, and insight, it also includes a greater number of observations indicating that J.G. does not demonstrate normal insight and judgment and exhibits severe mood disturbance. The ALJ appears to have focused on the evidence in the record consistent with the consultants' assessments, and did not discuss the evidence that was inconsistent. *See Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017) (improper for ALJ to "cherry-pick" from medical evidence as opposed to undertaking a "broader development" of the evidence in its entirety).

Considering the record as a whole, the ALJ's conclusion that J.G.'s mental status examinations "generally indicated normal thought process[es]" is not supported by substantial evidence. For example, the ALJ cites a visit with Dr. Estupinian, J.G.'s treating psychologist in January of 2018, where Dr. Estupinian reported that J.G.'s insight and judgment were "fair" and J.G. was feeling better on medication. AR 602. But just weeks prior to this visit, in November 2017, J.G. was admitted to the emergency room for depression, anxiety, and bipolar disorder, seeking psychiatric care. AR 608-09. And after J.G. was discharged, Dr. Estupinian noted J.G.'s thought processes were focused on "perceived injustices by others" with "limited insight." AR 853-55. Similarly, the ALJ refers to a visit J.G. made to a physician in May 2018, where the physician reported J.G. exhibited "good eye contact" and "normal speech". AR 789. But yet

6

again, only weeks prior, in April 2018, J.G. was hospitalized for two weeks after having attempted suicide. AR 633. Indeed, the specific medical record cited by the ALJ as indicating normal thought processes refers to this hospitalization. *See* AR 788. In sum, mental status exams that indicate other than normal insight and judgment are found throughout J.G.'s claimed period of disability. AR 868 (5/26/16: "Thought process: blocked and reports memory loss during the past two weeks."); AR 864 (7/8/16: "Insight: poor; judgment: poor"); AR 904 (1/11/17: "Thought process: tangential; Thought content: persecutory; Insight: Limited."); AR 969 (12/30/19: Insight and judgment: "Marginal"); AR 968 (1/21/20: same); AR 967 (3/31/20: same); AR 966 (5/27/20: same); AR 964 (6/24/20: same); AR 963 (7/7/20: same). The ALJ did not acknowledge the record of J.G's repeated episodes of suicidal ideation, hospitalization, or depression and anxiety, or explain how the consultant's findings are consistent with that history. *See, e.g.*, AR 858 (4/26/2017 "he showed pictures of parking structures he considered jumping off of"); AR 749 (9/7/17: "patient has underlying depression . . . passive thoughts of suicide but no plan . . . demonstrated self-harm tendencies as well"); AR 853 (11/20/17: "continues to experience suicidal ideation"); AR 833 (3/26/2019 "continued symptoms of moodiness, anxiety through the roof"); AR 842 (10/05/2019 "continues to struggle with a depressed mood and suicidal ideation daily . . . patient's mood was anxious and depressed"); AR 843 (11/02/2019 "mood was anxious"); AR 960 (2/22/20: "patient . . . indicated depression 10/10"); AR 959 (4/4/20: "patient reported feeling a '10+' on anxiety symptoms").

Additionally, the ALJ did not explain how J.G.'s "poor effort on a neuropsychology evaluation" supports Drs. Morgan's and Jacobs's conclusions that J.G. has only moderate limitations in mental functioning. AR 26 ("[The consultants] concluded that the claimant's depression, anxiety, and personality disorders cause moderate limitations in the "paragraph B" criteria . . . . In support of this conclusion, they noted poor effort on a neuropsychological evaluation."). However, the ALJ acknowledges elsewhere that "the only assessments of the claimant's mental function were invalidated by his variable effort" and "thus, the claimant's true cognitive functioning could not be assessed." AR 25. If the neuropsychologic evaluation did not yield valid results, then it cannot support any assessment of mental functioning, let alone the

7

1    consultants' conclusion that J.G. had moderate limitations.

2    Having considered the ALJ's explanations for why she found the consultants' assessments
3    persuasive, as well as the record as a whole, the Court concludes that the ALJ's conclusions are
4    not supported by substantial evidence in the record.

### 2. Dr. Greene's Medical Opinion

6    J.G. contends that the ALJ's assessment of Dr. Greene's medical opinion is not supported
7    by substantial evidence. The Court agrees.

8    Dr. Greene has been J.G.'s treating psychiatrist since October 9, 2018. AR 997. Dr.
9    Greene completed a mental residual functional capacity questionnaire based on his treatment of
10   J.G. On June 12, 2019, Dr. Greene opined that J.G.'s symptoms include anhedonia, appetite
11   disturbance, decreased energy, suicidal ideations, flat or inappropriate affect, feelings of guilt or
12   worthlessness, general persistent anxiety, difficulty thinking and concentrating, emotional lability,
13   memory impairment, and sleep disturbance. AR 836-37. Based on his examinations of J.G., Dr.
14   Greene observed that J.G.'s ability to understand and remember very short and simple instructions
15   would seriously limit, but not preclude, him from performing unskilled work. AR 837. However,
16   he noted that J.G. would be unable to meet competitive standards due to an inability to, for
17   example: remember work-like procedures, carry out very short and simple instructions, maintain
18   attention for a two-hour segment, maintain regular attendance, sustain an ordinary routine without
19   supervision, or work in close proximity to others without distraction. *Id.* Dr. Greene explained
20   that clinical findings of impairment in concentration, motivation, energy, and feelings of
21   worthlessness support these limitations. AR 838. Dr. Greene also noted that these symptoms
22   would cause J.G. to miss more than four workdays per month and frequently require unscheduled
23   breaks. AR 838. Dr. Greene concluded these symptoms would render J.G. unable to perform
24   even simple, routine, repetitive tasks limited to only occasional interaction with coworkers. AR
25   839.

26   In a post-hearing statement considered by the ALJ, Dr. Greene provided greater detail
27   regarding his medical opinions. He explained that he diagnosed J.G. with major depressive
28   disorder based on J.G. endorsing "six of the nine necessary symptoms for major depressive

disorder, a history of suffering from major depressive disorder symptoms from 2015 to 2018, and a need for hospitalization for suicidal thoughts in April 2018." AR 997-98. As of August 24, 2020, Dr. Greene further reported that "[J.G.] continues to report suicidal thoughts, depressed mood, loss of interest in activities, energy, and concentration impairment." AR 1001. Dr. Greene opined that these symptoms are consistent with major depressive order and that these symptoms impair J.G.'s ability to perform simple and complex tasks, maintain a work schedule, and interact appropriately with others. *Id.*

The ALJ found Dr. Greene's opinion that J.G. had marked limitations in each of the four basic areas of mental function described by the "paragraph B" criteria "are not particularly well supported by Dr. Greene's treatment notes and are not wholly consistent with the longitudinal evidence." AR 27. The ALJ stated that Dr. Greene "did note some mood disturbance, irritability, persecutory thoughts, and restlessness . . . symptoms [which] would be expected to cause some degree of limitation in the mental abilities of work." *Id.* But she observed that Dr. Greene's "treatment notes reflected that the claimant was appropriately dressed, made good eye contact, and exhibited normal thoughts, judgment, and insight," and that "[o]ther treaters . . . even noted normal mood and affect." *Id.*

J.G. contends the ALJ erred by failing to adequately consider Dr. Greene's opinions. Dkt. No. 12 at 16. J.G. argues that the ALJ selectively considered a minority of Dr. Greene's findings while ignoring the bulk of his assessments and the context of his overall treatment of J.G. *Id.*; Dkt. No. 19 at 7.

An ALJ errs in assessing a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014). Here, the ALJ did not explain how findings that J.G. dressed appropriately and made good eye contact are inconsistent with Dr. Greene's opinion regarding J.G's functional limitations, which concern his ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *See* 20 C.F.R. § 404.1520a. As for the ALJ's

9

observation that Dr. Greene's treatment notes and other longitudinal evidence demonstrate that J.G. exhibited normal thoughts, judgment, and insight, the record viewed as a whole suggests that J.G. demonstrated more serious and persistent deficiencies in mental functioning than the ALJ acknowledged. For example, Dr. Greene's treatment notes frequently mention J.G.'s psychiatric symptoms and diagnoses over time. *See, e.g.*, AR 877 (9/3/19: "discussed with [J.G.] potential symptoms of depression and anxiety, potential side effects to meds, his endorsement of having sadness and anxiety. . . . Assessment: Major Depressive Disorder, Severe"); AR 965 (5/27/20 "discussed . . . his endorsement of having exacerbation of depression and anxiety . . . continues to have constricted expression of emotions"); AR 964 (6/24/20: "discussed . . . his endorsement of having continued symptoms of depression and anxiety; assessment: major depressive disorder, severe; symptoms continue . . . no suicidal plans but thought is present"); AR 963 (7/7/20: "suicidal ideation present; agitation is present"). Indeed, two of the records cited by the ALJ for the proposition that J.G. exhibits "normal mood and affect" state the contrary. *See* AR 877[7] ("[J.G.'s] symptoms of depression and anxiety continued to be disabling for [J.G.] at the time of [this] progress note."); AR 958 ("Patient expressed 'anger, bitterness, and fear' . . . Patient's mood was depressed."). Moreover, Dr. Greene's treatment notes and assessment appear to be consistent with the record as a whole. *See, e.g.*, AR 774 ("it is likely that [J.G.] is experiencing significant psychological distress . . . [which] appears to be impacting his functioning in daily life . . . his psychological symptoms impair [J.G.] to the point where he cannot put forth full effort."); AR 858 ("discussed the possibility of patient entering a crisis residential [center]"); AR 893 ("[Since January 2016], [J.G.] has been unable to sustain significant periods of time without severe and disruptive mood symptoms . . . rang[ing] from anxious to depressed. Mood symptoms often prevent him from getting out of bed and leaving home, disrupting his day-to-day routine.").

Having considered the ALJ's explanations for why she found Dr. Greene's opinion unpersuasive, as well as the record as a whole, the Court finds the ALJ's assessment is not supported by substantial evidence.

---

[7] The Court also notes that the ALJ incorrectly identified this record as that of a treating physician other than Dr. Greene. *See* AR 27.

### 3. Dr. Estupinian's Medical Opinion

J.G. contends that the ALJ's assessment of Dr. Estupinian's medical opinion concerning J.G.'s functional limitations is not supported by substantial evidence. The Court agrees.

In January 2020, Dr. Estupinian completed a mental impairment questionnaire. AR 893-900. In the questionnaire, Dr. Estupinian stated that she had treated J.G. intermittently from January 2016 to the date of her opinion. AR 893. Dr. Estupinian reported that J.G.'s symptoms include anhedonia, easy fatigue, detachment from social relationships, panic attacks with persistent concern of future attacks, feelings of inadequacy, involuntary re-experiencing of a past trauma, irritability, mood disturbance, distractibility, unstable interpersonal relationships, exaggerated startle response, decreased energy, suicidal ideations, general persistent anxiety, difficulty thinking and concentrating, memory impairment, sleep disturbance, and emotional lability. AR 895. She stated that J.G. is unable to sustain significant periods of time without experiencing these symptoms, preventing him from getting out of bed and leaving home, disrupting his daily routine. AR 893. Dr. Estupinian diagnosed J.G. with posttraumatic stress disorder and major depressive disorder (recurrent, severe). *Id.*

Dr. Estupinian opined that these symptoms result in moderate or marked limitations or an inability to meet competitive standards in most areas of mental aptitude necessary for unskilled work. AR 896. She found that J.G. has moderate limitations in understanding, remembering, or applying information. AR 897. She found J.G. has "no useful ability" to deal with normal work stress. AR 896. Dr. Estupinian found J.G. has marked limitations in interacting with others, and extreme limitations in concentration, persistence, or maintaining pace and adapting or managing oneself. *Id.* She explained "[J.G.] has been unable to obtain mood stability over many years" and that his "symptoms of severe depression impact his ability to focus and concentrate." AR 898. Further, Dr. Estupinian thought [J.G.] would be unable to complete a workday and would be absent from work more than four days per month. AR 899.

In a post-hearing statement reviewed by the ALJ, Dr. Estupinian provided further detail regarding her medical opinions. She noted that her diagnosis is based upon "empirically valid measures." AR 992. With respect to J.G.'s symptoms, she further explained that J.G. is prone to

isolating in his bedroom, that he has difficulty maintaining a day-to-day routine, and that daily living has been hard for him to consistently maintain. AR 994. She opines that because J.G. is unable to take care of himself, he will not be reliable in the workplace. *See id.* She further concludes that J.G. is unable to sustain full-time employment "at any level." AR 995.

The ALJ found Dr. Estupinian's opinion regarding J.G.'s functional limitations unpersuasive for two reasons. First, the ALJ concluded that "the opined limitations appear excessive in light of her own treatment notes as well as those from other treaters." AR 28. *Id.* She explained that Dr. Estupinian's treatment notes "most often documented mood abnormalities, sometimes with ruminations, restlessness, or agitation. However, assessments of memory or cognitive function did not occur, aside from assessments of thought processes, thought content, judgment, insight, and orientation." AR 28. This is not a fair characterization of Dr. Estupinian's treatment notes as a whole, which document repeated instances of J.G.'s suicidal ideation and pronounced symptoms of anxiety and depression over an extended period. *See, e.g.*, AR 858 (4/26/17: "increase in depressive symptoms . . . showed pictures of parking structures he considered jumping off"); AR 853 (11/20/2017: "psychiatric symptoms related to mood disorder and anxiety disorder . . . continues to experience suicidal ideation"); AR 842 (10/5/19: "continues to struggle with a depressed mood and suicidal ideation daily . . . patient's mood was anxious and depressed"); AR 843 (11/2/19: "continues to struggle with depression and anxiety . . . especially anxious today . . . mood was anxious"); AR 844 (12/7/19: "reported coming out of a depressive episode that lasted 2 weeks . . . mood was depressed"); AR 893 (1/28/20: "[Since January 2016], [J.G.] has been unable to sustain significant periods of time without severe and disruptive mood symptoms . . . rang[ing] from anxious to depressed. Mood symptoms often prevent him from getting out of bed and leaving home, disrupting his day-to-day routine.").

Second, the ALJ found Dr. Estupinian's opinion unpersuasive because she concluded that the opinion was inconsistent with "[J.G.'s] descriptions of his activities," such as "independence in his activities of daily living, walking for exercise, and paying attention to his diet as a method of mitigating symptoms." AR 28. The ALJ did not explain how J.G.'s activities of daily living are inconsistent with Dr. Estupinian's medical opinion. For example, there is no inherent

12

inconsistency between walking for exercise and an inability to deal with normal work stress, or paying attention to one's diet and an inability to achieve mood stability. *See George D. D. L. v. Saul*, No. 20-CV-03552-SK, 2021 WL 5205600, at *8 (N.D. Cal. Nov. 9, 2021) ("Disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."); *see also Gerold v. Kijakazi*, No. 21-CV-02217-SI, 2022 WL 3109568, at *6 (N.D. Cal. Aug. 4, 2022) ("[T]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be."). Dr. Estupinian provided a detailed analysis as to which symptoms she had observed, and which symptoms supported her opinions. *See* AR 992-5 ("Symptoms of PTSD have a significant impact on [J.G.'s] ability to sleep and trust other people. He is prone to isolating in his bedroom and has difficulty maintaining a day-to-day routine. . . . The basic fundamentals of daily living have been hard for him to maintain on a consistent basis."). Dr. Estupinian supported her conclusions with relevant, objective medical observations and findings, and the ALJ's assessment that these conclusion are inconsistent with other evidence in the record is not supported by substantial evidence.

Having considered the ALJ's explanations for why she found Dr. Estupinian's opinions unpersuasive, and the record as a whole, the Court finds the ALJ's assessment is not supported by substantial evidence.

### B.     J.G.'s Subjective Testimony

J.G. contends that the ALJ erred in discounting his testimony regarding the intensity, persistence and limiting effects of his mental health impairments. Dkt. No. 12 at 19. The Court agrees.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citing 42 U.S.C. § 423(d)(5)(A)). In assessing a claimant's subjective testimony, an ALJ conducts a two-step analysis. First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (*quoting Smolen v. Chater*,

1   80 F.3d 1273, 1281-82 (9th Cir. 1996)). If the claimant does so, and there is no affirmative

2   evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the

3   symptoms "only by offering specific, clear and convincing reasons for doing so." *Id*. (*quoting*

4   *Smolen*, 80 F.3d at 1281); *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) ("We

5   therefore review the ALJ's discrediting of Claimant's testimony for specific, clear, and convincing

6   reasons.").

   Here, J.G. reported and testified that he experiences anxiety with hyperventilation in social situations, isolation with his depressive symptoms, and repeated suicidal ideation. AR 417. He reported that his mood fluctuations make it difficult for him to be around other people and to stay motivated. *Id.* He reported that his symptoms affect his ability to remember, complete tasks, concentrate, understand and follow instructions, and get along with others. AR 456. J.G. reported that he can be inattentive to his personal care, including dressing himself and bathing, due to his symptoms. AR 452. He reported he seldom goes out, and when he goes out, he is typically accompanied by his mother. AR 454. His lack of concentration interferes with his ability to manage his finances, and his hobbies no longer interest him. AR 454-55. He indicated that he is able to follow written instructions to a "fair" degree, but he requires repetition of oral instructions. AR 456. He thought he could sustain attention for about 15 minutes. *Id.* He indicated that he does not interact well with authority figures and has lost jobs due to difficulty with interpersonal interactions. AR 457. J.G. stated that he does not handle stress or change well and that he does not feel safe in environments with multiple people. *Id.*

   The ALJ found that J.G's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but she also found that J.G.'s statements concerning the intensity, persistence and limiting effects of his mental health impairments were not entirely consistent with the medical evidence and other evidence in the record. AR 24. Because the ALJ did not identify any affirmative evidence of malingering, she was required to provide "specific, clear and convincing reasons" for this determination. *Tommasetti*, 533 F.3d at 1039 (citation and internal quotation marks omitted). The Court finds that the ALJ failed to do so.

   The ALJ's stated reasons for discounting J.G.'s testimony are that "even when seen in the

emergency room or hospital for active suicidal ideations, the claimant's mental status examinations were typically within normal limits, aside from his mood, affect, and insight," and that "while the claimant did endorse chronic suicidal thoughts, it appears that active suicidal ideations were typically not present outside of incidences of increased stress, such as conflicts with his mother or a break up." *See* AR 24. She further wrote that "[o]verall, the regularity of largely normal findings on mental status examinations suggests that [J.G.] retains at least fair function in the four basic areas of mental function described by the 'paragraph B' criteria," and "thus, greater limitations than those in the residual functional capacity are not warranted." *Id.*

However, the records on which the ALJ relied are limited, and it is unclear from the ALJ's decision how those records inform her assessment of the four paragraph B criteria (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself). *See supra* Sections III.A.1, III.A.2, III.A.3. The ALJ cited a mental status examination that indicates only that J.G. has a "normal" orientation and "normal" mood/affect by way of two checkboxes. AR 521. The boxes indicating "normal" judgment/insight and "normal" memory are not checked. *Id.* Whoever prepared the record noted that J.G. was "anxious" with "rapid unpressured speech." *Id.* In short, J.G's mental status examinations appear to have mixed and inconsistent results rather than "largely normal findings" with "regularity." *Compare, e.g.*, AR 963 ([Insight]/[Judgment] marginal); AR 964 (same); AR 965 (same); AR 966 (same); AR 967 (same); AR 968 (same); AR 969 (same) *with* AR 831 ([Insight]/[Judgment] good); AR 833 (same), *and* AR 854 (insight: limited; judgment: fair), *and* AR 868 (thought process: blocked and reports memory loss during the past two weeks).

Because the ALJ failed to provide specific, clear and convincing reasons for rejecting J.G's testimony, the Court finds the ALJ erred.

**IV. DISPOSITION**

J.G. asks that the Court grant summary judgment in his favor, reverse the decision of the Commissioner, and remand for further administrative proceedings. Dkt. No. 12 at 22. As discussed above, the Court finds the ALJ erred. On remand, the ALJ must reconsider: (1) the persuasiveness of the medical opinions in the record; and (2) whether J.G.'s subjective reports and

15

testimony should be discounted in light of the record as a whole. If the ALJ were to reach a different conclusion regarding the persuasiveness of the medical opinions and/or J.G.'s subjective reports, the outcome of J.G.'s disability determination could be affected. *See* 20 C.F.R. §§ 404.1520; 404.1520c; 404.1529(b)-(c). Therefore, a remand is appropriate here.

## V. CONCLUSION

Based on the foregoing, J.G.'s motion for summary judgment is granted, the Commissioner's motion for summary judgment is denied, and this matter is remanded for further proceedings consistent with this order. The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: February 16, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge